DAVID L. OSIAS (BAR NO. 091287)
DEBRA A. RILEY (BAR NO. 151925)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Telephone:   (619) 233-1155
Facsimile:   (619) 233-1158

Attorneys for Debtors in Possession

UNITED STATES BANKRUPTCY COURT

Southern District of California

| In re | Case No. 05-6040-H11 |
|---|---|
| MII LIQUIDATION, INC., a California corporation, formerly known as METABOLIFE INTERNATIONAL, INC., | Chapter 11 (Jointly Administered with Case No. 05-6041) |
| Debtor. | MOTION FOR AN ORDER (1) APPROVING COMPROMISE AND SETTLEMENT OF CERTAIN EPHEDRA CLAIMS AND (2) AUTHORIZING AND |
| EIN 33-0647672 | ESTABLISHING PROCEDURES TO SETTLE CERTAIN OTHER EPHEDRA |
| AHP LIQUIDATION, LLC, a Delaware limited liability company, formerly known as ALPINE HEALTH PRODUCTS, LLC, | CLAIMS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| Debtor. | Date:      June 28, 2006 Time:      10:30 a.m. |
| EIN 94-3376088 | Dept:      3 Judge:    Hon. John J. Hargrove |

    MII Liquidation, Inc., formerly known as Metabolife

International, Inc. ("MII"), and its wholly owned subsidiary

AHP Liquidation, LLC, formerly known as Alpine Health

Products, LLC ("AHP," and together with MII, the "Debtors in

Possession") move this Court for entry of an order (1) approving

the compromise and settlement of certain ephedra claims and

(2) authorizing and establishing procedures to settle certain other ephedra claims.

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This motion is made pursuant to 11 U.S.C. §§ 105(a) and 363(b), Federal Rules of Bankruptcy Procedure, Rules 2002 and 9019 and applicable Local Bankruptcy Rules.

This motion is based on, among other items, the Memorandum of Points and Authorities herein; the Declarations of Christopher Barclay, Responsible Natural Person of MII, Richard K. Traub, R. Gaylord Smith, and Michael Ballnik, the other pleadings filed in these chapter 11 cases, and such other evidence and argument as may be properly presented at the hearing on this motion.

**I.   INTRODUCTION**

In furtherance of the global resolution efforts, the Debtors in Possession seek to compromise and settle certain fully-insured Ephedra Claims and to establish procedures by which future settlements of certain Ephedra Claims can be accomplished in an efficient and cost-effective manner.

## II.    BACKGROUND

### A.    MII and its Business

On June 30, 2005 (the "Petition Date"), MII and AHP commenced these cases under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors in Possession are managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  A statutory committee of unsecured creditors ("OCC") has been appointed in these cases.  A statutory committee of retailers and indemnitee claimants ("OIC," together with the OCC, the "Committees") has also been appointed in these cases.

### B.    Metabolife Actions/Claims

Since 1999, MII has been the subject of numerous lawsuits, primarily alleging products liability associated with Metabolife 356®.[1]  As of the Petition Date, approximately 362 ephedra-based personal-injury tort and wrongful-death actions ("Ephedra Actions") were pending against MII in state and federal courts, alleging injuries resulting from the purchase and use of MII's products that contained ephedra.

In addition to the above-referenced Ephedra Actions, approximately in excess of 100 proofs of claim were filed by the Claims Bar Date that alleged new ephedra-based personal-injury

---

[1]  Metabolife 356®, a dietary supplement designed to help people lose weight and increase energy, contained ephedra (ma huang).  MII stopped selling ephedra-based products in December 2003.

1

2

3   tort and wrongful-death actions from injuries resulting from the

4   purchase and use of Metabolife's products that contained ephedra

5   ("Ephedra Proofs of Claim," collectively with Ephedra Actions,

6   "Ephedra Claims").

7       In addition to naming MII as a defendant, many of the

8   Ephedra Claims named other parties with a connection to MII that

9   were also responsible for the alleged injuries.  These other

10  defendants include one or more of MII's three shareholders —

11  Michael L. Blevins, William R. Bradley, and Michael J. Ellis

12  ("Shareholders"), one or more retailers, the companies that

13  manufactured the MII ephedra-containing products, and the various

14  distributors of MII's ephedra-containing products (collectively,

15  the "Third Parties").

16      **C.   <u>Global Resolution Efforts</u>**

17      On September 9, 2005, this Court entered its Order on Motion

18  for (A) on an Emergency Basis, a Temporary Restraining Order,

19  (B) Upon Due Notice, a Preliminary Injunction, and (C) Certain

20  and Additional Relief ("Injunction") which stayed and enjoined

21  through December 6, 2005, all proceedings in any case, suit, or

22  action commenced by an Ephedra plaintiff including any

23  proceedings against Third Parties in the Ephedra Actions.  By

24  agreement, the Injunction has been extended three times, to

25  August 3, 2006.

26      To assist in the possible consensual resolution of

27  unliquidated and disputed Ephedra Claims, the Debtors in

28

Possession also requested and this Court ordered all parties asserting Ephedra Claims against MII and those parties with claims relating to Metabolife ephedra products to mediation under section 105 of the Bankruptcy Code and Local Bankruptcy Rule 7016-6 ("Order in Aid of Mediation").  The Debtors in Possession, the OCC, the OIC, and the Shareholders agreed to utilize the expertise of Professor Eric Green ("Professor Green") to facilitate the mediation process.  Mediation sessions were held on November 29, 2005 (video conference), January 30 and 31, 2006, and February 21 and 22, 2006 (by the Liaison Group), March 28 to 30, 2006, April 28 (Plaintiffs only), and May 24 and 25 (Defendants only).  Professor Green has reported to this Court that he believed that progress was being made.  In furtherance of the progress, the parties have scheduled further mediation sessions with Professor Green in June and July.

### D.    MII's Insurance

MII has various insurance policies covering ephedra bodily injury claims for the period 1996 through 2004.  A draft insurance coverage chart reflecting MII's primary and excess liability insurance policies which have been the subject of the ephedra tort bodily injury tenders and claims is attached as Exhibit "A" to the Declaration of Christopher Barclay, Responsible Natural Person of MII, in support of this motion. Coverage is subject to the terms, conditions, limitations, and exclusions of the applicable policies, and the chart is not to be

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

644289.05/SD

construed as a warranty of claim coverage.  Based upon current information to date, it is the understanding of the Debtors in Possession that there is no dispute with the carriers whose policies are currently triggered, that through August 1, 2001, the Debtors in Possession have applicable liability coverage for insurable claims ("Pre-8/2001 Ephedra Claims") up to the limits of each of the policies for each of the years.

As reflected on the chart, Evanston Insurance Company and Investors Insurance Company of America ("Evanston") provided coverage to the Debtors in Possession pursuant to six separate insurance policies from 1997 to 2001, subject to the terms, conditions, limitations and exclusions of the applicable policies ("Evanston Policies").  Of these six separate policies, four provided primary coverage up to $1,000,000, while two provided excess coverage up to $25,000,000.

Currently, only one of Evanston's primary coverage policies has not been exhausted.  That insurance policy, Investors Insurance Company of America policy number GLP1002781, provided coverage for the time period July 1, 1997, to August 1, 1998.  It currently has a remaining policy aggregate of approximately $513,000.

The two remaining excess insurance policies ("Evanston Excess Policies"), issued by Evanston Insurance Company , are both numbered CU-AA-1597 MEU, and ran for two consecutive policy periods.  The first policy period was from August 1, 1998, to

1

2

3  August 1, 1999, and approximately $20,374,000 of the $25 million

4  dollars of afforded coverage remains unexpended.  The second

5  policy period was from August 1, 1999, to August 1, 2000, and

6  approximately $21,324,000 of the $25 million dollars of afforded

7  coverage remains unexpended.

8      As further reflected on the chart, National Union Fire

9  Insurance Company of Pittsburgh, an AIG company ("National

10  Union"), provided the Debtors in Possession with excess coverage

11  for the period August 1, 2000, to August 1, 2001,[2] subject to the

12  terms, conditions, limitations and exclusions of the applicable

13  policy ("National Union Excess Policy").  The Debtors in

14  Possession believe that it currently has a remaining policy

15  aggregate of approximately $19,612,500 of the $25 million

16  dollars.

17      Once the Evanston Policies and National Union Excess Policy,

18  as noted above, have been exhausted, additional layers of

19  insurance coverage up to as much as an additional $25 million

20  through August 1, 2001,[3] exist.

21  **E.    Settlements**

22      Following the closing of the sale transaction to IdeaSphere,

23  Inc. in November 2005, the Debtors in Possession turned their

24  attention to resolving the Ephedra Claims.  To that end, the

25

26

27  [2]  The primary coverage provided by AISLIC has been exhausted.

28  [3]  See draft insurance coverage chart attached as Exhibit A to the Declaration
of Christopher Barclay filed in support of this Motion.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

644289.05/SD

1

2

3   focus has been on the mediation.  In connection with the

4   mediation, Traub Eglin Lieberman Straus LLP ("Traub Law Firm")[4]

5   evaluated individual claims insured under the Evanston Insurers

6   policies and attempted to settle certain claims, pursuant to

7   discussions with Professor Green and others.  In evaluating these

8   claims, the Traub Law Firm coordinated with defense counsel at

9   Lewis, Brisbois, Bisgaard and Smith (R. Gaylord Smith, Esq. and

10  Tim J. Vanden Heuvel, Esq.), retained by MII insurers to defend

11  MII, who along with the Traub Law Firm, have years of experience

12  evaluating and litigating ephedra injury claims brought against

13  MII and other ephedra manufacturers.  The Traub Law Firm also

14  coordinated with experienced plaintiffs' counsel representing the

15  claimants and had frank discussions about the value of various

16  cases after intense evaluation of the medical records of the

17  claimants.

18      In connection with these efforts and with the assistance of

19  Professor Green, certain claims insured within the Evanston

20  Insurers policy periods[5] have been resolved by settlement pending

21  execution of releases by and between the plaintiff and all

22  defendants and their insurance carriers.  The claims are as

23  follows:

24

25

26  [4]  Counsel for Evanston.

27  [5]  With respect to three of the claims, National Union will be satisfying a
        portion of the settlement amount as a result of the type of alleged injury
28      and date of injury.  With respect to one other, National Union will be
        satisfying the entire amount of the settlement.

| CLAIMANT | ACTION/CASE NO. | PROOF OF CLAIM NO.[6] |
|---|---|---|
| Aisha Colbert | Aisha Colbert v. MII, JCCP No. 4360-00089 | M236/A57 |
| Janet Emmert<br>Andrew Emmert<br>Aaron Emmert<br>Hannah Emmert | Janet Emmert, et. al. v. MII, et al., JCCP No. 4360-00058 | M232/A53<br>M233/A54<br>M234/A55<br>M235/A56 |
| John P. Hunt | John P. Hunt v. MII, et al., JCCP No. 4360-00071 | M241/A62 |
| Shelli Schlaufhauser | Shelli Schlaufhauser and John Schlaufhauser v. MII, et al., MDL 1598, S.D.N.Y. Case No. 1:04-cv-02891 | M29 |
| Patrick Chalvire<br>Grace Chalvire | Grace Chalvire and Patrick Chalvire v. MII, et al., JCCP 4360-00052 | M276/A25<br>M277/A32 |
| Joanne Marlow<br>John Marlow | Joanne Marlow and John Marlow v. MII, MDL-1598, S.D.N.Y. Case No. 1:04-cv-02887 | M248/A69<br>M249/A70 |
| Nancy Rhome | Nancy Rhome v. MII, MDL-1598, S.D.N.Y. Case No. 1:04-cv-08555 | M278/A31 |

---

[6]  Proof of claim numbers indicated with an "M" are proofs of claim filed in the MII bankruptcy case (Case No. 05-06040).  Proofs of claim numbers indicated with an "A" are proofs of claim filed in the AHP bankruptcy case (Case No. 05-06041).

| CLAIMANT | ACTION/CASE NO. | PROOF OF CLAIM NO.[6] |
|---|---|---|
| Terri Bagley | Terri Bagley v. MII, et al., SDSC Case No. GIC 849900, (JCCP number unassigned) | M323 |
| Gregory Litten | Gregory Litten v. MII, et al., SDSC Case No. GIC 849903, (JCCP number unassigned) | M351 |
| Lydia Reynoso | Lydia Reynoso v. MII, (JCCP number unassigned) | M273/A33 |
| Joan Scott | Joan Scott v. MII, (JCCP number unassigned) | M225/A46 |
| Charles Cate | Charles Cate v. MII, JCCP number 4360-00051. | M702 |
| Patricia Collins | Patricia Collins v. MII, et al., MDL-1598; S.D.N.Y Case No. 1:05-cv-00154 | M476/A108 |
| Eric Harned | Eric Harned v. MII, et al., USBC-S.D., Cal. Case No. 06-90188-JH | M552 |
| Candice LeGrande | Candice LeGrande v. MII, 10th Judicial District of Galveston County, Texas; Case No. 03-CV-0748 | M589/A135 |
| Charles Motley | Charles Motley v. MII, MDL-1598, S.D.N.Y. Case No. 1:05-cv-01013 | M505 |

| CLAIMANT | ACTION/CASE NO. | PROOF OF CLAIM NO.[6] |
|---|---|---|
| Jerry Nygren | <u>Jerry Nygren and Janet Nygren v. MII, et al.</u>, USBC-S.D.Cal. Case No. 06-90189 | M645 |
| Bertie O'Bryant | <u>Bertie O'Bryant v. MII, et al.</u>, USBC-S.D.Cal. Case No. 06-90187 | M644 |
| Gail O'Neal | <u>Gail O'Neal v. MII</u>, USBC-S.D.Cal. Case No. 06-90185 | M643 |
| Joseph Saiter | <u>Joseph Saiter v. MII, et al.</u>; USDC-S.D.Cal. Case No. 06-CV-669 | M30 |
| Terry Shupe | <u>Terry Shupe v. MII, et al.</u>, MDL-1598; S.D.N.Y Case No. 1:04-cv-07640 | M615 |

In total, proofs of claim asserting Ephedra Claims aggregating $130,400,000 have been settled.[7]  As part of each settlement, respective proofs of claim will be withdrawn, lawsuits dismissed, and defendants (including all Third Parties) will obtain releases.  After payment of the settlement amounts by the respective insurance carriers, approximately $57,063,000 of aggregate insurance coverage remains available under the policies

---

[7]  The Debtors in Possession note that these cases should not be construed as a representative sample of outstanding allowed Ephedra Claims and the settlements reached are not in any way predictable of outcomes of other cases.

issued by Evanston and National Union, with the excess insurance layers fully intact.[8]

Based on the professional judgments of Richard K. Traub, Evanston's counsel, and Michael Ballnik, National Union's counsel, and the advice of R. Gaylord Smith, MII's defense counsel retained by the insurers, adequate coverage for settlements, litigation, or other resolution exists for the remaining Pre-8/2001 Ephedra Claims, after payment of the above-referenced settlements.[9]

## III.   COMPROMISE AND SETTLEMENT OF CERTAIN EPHEDRA CLAIMS

Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Debtors in Possession seek approval to settle the above-referenced Ephedra Claims with funds solely from insurance coverage.   In evaluating the settlement of claims, the court must determine that (1) the settlement is fair and equitable, and (2) that the settlement is in the best interests of the bankruptcy estate.   See, Protective Comm. For Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1167 (1968).   In determining whether a proposed settlement is fair and equitable, two principles should guide the

---

[8] Coverage includes all layers of excess coverage. Excess carriers have no obligation concerning any claim until the underlying policy is exhausted. MII has put all excess carriers on notice of the claims and the excess carriers have sent MII (directly or to MII's insurance coverage counsel) correspondence acknowledging notice and reserving their rights pursuant to their policies.   To date, MII has received no information to suggest that an excess carrier would be unable to satisfy allowed claims (or settlements) for financial reasons, other than from Kemper Insurance.

court.  First, "[c]ompromises are favored in bankruptcy."  (10 Lawrence P. King, Collier on Bankruptcy, 9019.01 at 9019-2 (15th ed. rev. 1997 citing Marandas v. Bishop (In re Sassales), 160 B.R. 646, 653 (D. Ore. 1993).)  Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness.  "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976).  The question is whether the settlement meets a minimal threshold of reasonableness.  See, Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).  In this case, the settlements should be approved because each settlement (and in the aggregate) is fair and reasonable and in the best interest of creditors and other parties in interest.

In determining whether a proposed settlement is fair and reasonable, the Court should consider, among other factors, (a) the probability of success in the litigation, (b) the difficulties to be encountered in collection, (c) the complexity of the litigation and the expense, inconvenience and delay attendant thereto, and (d) the paramount interest of creditors. In re A&C Properties, 784 F.2d 1377 (9th Cir. 1986).

1

2

3    Moreover, courts may give weight to the opinions of the

4    trustee, the parties, and their attorneys in assessing the four

5    factors articulated above.  See, In re Blair, 538 F.2d 849, 851

6    (9th Cir. 1976).  Mr. Barclay, the responsible natural person of

7    the Debtors in Possession, has weighed those factors in reaching

8    his business judgment that settlement of these Ephedra Claims is

9    fair and equitable and in the best interest of creditors and the

10   estates.  Also, and as important, defense counsel for Evanston

11   and Professor Green have reviewed the terms of the settlements

12   and believe that the settlement amounts are fair and reasonable

13   under the circumstances of each of the respective cases.

14   **A.    Probability of Success**

15   Although the Debtors in Possession continue to vigorously

16   contest both liability and damages, there exists significant

17   risks and uncertainty if these cases were to go to trial.  The

18   estates are not in a position to absorb that risk.  The

19   settlement of these Ephedra Claims resolves the uncertainty for

20   the insurance carriers and ensures that insurance proceeds are

21   available to satisfy other Ephedra Claims.  Thus the settlements

22   achieve, in a more efficient and expeditious manner, outcomes

23   that are fair and equitable, without risk to the estates and

24   other holders of Ephedra Claims.

25   **B.    Difficulties in Collection**

26   Not applicable in this case.

27

28

1

2

3
      **C.**   **Complexity of the Litigation and Expense, Inconvenience, and Delay**

4

5
If the settlements are not approved and litigation goes

6
forward, the estates' focus will be on the litigation, rather

7
than the mediation.  Extensive resources will be used to prepare

8
for and defend these actions.  Consequently, the settlement of

9
these Ephedra Claims prevents (i) delay in the mediation process,

10
(ii) the occurrence of significant costs, and (iii) the waste of

11
estate resources.

12
      **D.**   **Paramount Interest of Creditors**

13
The terms of these settlements are the product of extensive

14
arms-length negotiations.  The settlements are in the best

15
interest of creditors because payments of these settlements will

16
not affect the interests of other creditors; the payments will be

17
made from insurance proceeds that are not otherwise available to

18
the estates.  Moreover, the payment of these settlements does not

19
jeopardize insurance coverage for the non-settled Ephedra Claims.

20
     **IV.**   **ESTABLISHMENT OF PROCEDURES FOR SETTLING**

21
**OTHER PRE-8/2001 EPHEDRA CLAIMS**

22
While Bankruptcy Rule 9019(a) generally requires approval of

23
settlements by motion on 20 days notice to, among others, all

24
creditors, Bankruptcy Rule 9019(b) provides that those

25
requirements are not always necessary:  "[a]fter a hearing on

26
such notice as the court may direct, the court may fix a class or

27
classes of controversies and authorize the trustee to compromise

28

or settle controversies within such class or classes without further notice."  Thus, Bankruptcy Rule 9019(b) provides a mechanism for streamlined settlement procedures, where appropriate.  Section 105(a) of the Bankruptcy Code provides further support for the streamlined settlement procedures sought herein.  See, 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.")  In addition, pursuant to section 102(1)(a)[9] of the Bankruptcy Code and Bankruptcy Rules 9006(c)[10] and 2002(a)(3)[11] the court may limit notice of proposed settlements to fewer than all creditors and may reduce the 20 day notice period pertaining to such settlements.

The Debtors in Possession propose that in connection with settlements relating to Pre-8/2001 Ephedra Claims in amounts less than $350,000 that they be allowed to use the Settlement Procedures set forth below; rather than seeking approval of any such settlement pursuant to a fully-noticed motion (and or Notice

---

[9]  Section 102(1)(a) provides that "after notice and a hearing," means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in particular circumstances."  11 U.S.C. § 102(1)(a).

[10]  Bankruptcy Rule 9006(c) provides that "when an act is required or allowed to be done at or within a specified time by [the Bankruptcy Rules] or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."  Bankruptcy Rule 9006(c).

[11]  Bankruptcy Rule 2002(a)(3) provides that there shall be at least 20 days notice by mail of "the hearing on approval of a compromise or settlement of a controversy . . . unless the court for cause shown directs that notice not be sent."  Bankruptcy Rule 2002(a)(3).

1

2

3  of Intended Action as allowed under the local rules).[12]   The

4  Debtors in Possession believe that the cap of $350,000 is

5  reasonable because it represents less than the amount of

6  insurance proceeds each holder of a Pre-8/2001 Ephedra Claim

7  would receive if it were entitled to an equal share of the

8  insurance proceeds for the applicable policy year.  Further, to

9  date, most of the ephedra case settlements (pre- and

10 post-bankruptcy) have been in amounts less than $350,000.  Thus,

11 the proposed cap is reasonable under the circumstances.

12      In negotiating settlements of Pre-8/2001 Ephedra Claims, the

13 Debtors in Possession will be guided by several factors,

14 including the likelihood of the Debtors in Possession succeeding

15 in litigation, the estimated costs that the Debtors in Possession

16 (including the insurers) would incur in litigating or otherwise

17 resolving the Pre-8/2001 Ephedra Claims, the historical

18 settlement amounts, and the depletion of available insurance

19 coverage and the impact on other Pre-8/2001 Ephedra Claims.

20 Granting the authority requested herein would enable the Debtors

21 in Possession to efficiently and economically settle numerous

22 claims asserted against their estates and, thus, limit their

23 potential liability on such claims as evidenced by the proofs of

24 claim.

25

26

27 [12]  Depending on the circumstances at the time of the settlement, including the
28 settlement amount, insurance availability, and the likelihood that a party
   will object, the Debtors in Possession will seek approval of settlements in
   excess of $350,000 by either noticed Motion or Notice of Intended Action.

By proceeding in this fashion, the Debtors in Possession believe they can reduce postpetition costs incurred in resolving such claims, thereby preserving estate assets and increasing the recoveries of all uninsured or underinsured claimants. At the same time, the guidelines and procedures proposed herein will preserve the oversight functions of the U.S. Trustee and the Committees.

**A.    The Settlement Procedures**

Specifically with respect to the settlement of any Pre-8/2001 Ephedra Claim, the Debtors in Possession seek an order implementing the following settlement procedures ("Settlement Procedures"):

      i.   The Debtors in Possession will serve via e-mail, facsimile, or overnight delivery (a) the attorneys for the OCC, (b) the attorneys for the OIC, (c) the U.S. Trustee, (d) the attorneys for the Shareholders, (e) the members of the Liaison Group, and (f) Professor Green (collectively, the "Noticed Parties"), on a confidential basis, a summary of the proposed settlement of a Pre-8/2001 Ephedra Claim, which provides that such proposed settlement (i) is in an amount not exceeding $350,000, (ii) provides for immediate or deferred payment of cash up to the settlement amount, (iii) is payable solely out of insurance coverage

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

644289.05/SD

1

2

3    proceeds, and (iv) identifies the co-defendants

4    being released ("Settlement Summary").  Further,

5    all Noticed Parties will receive a statement by

6    insurer's counsel and insurer that will include

7    (i) the balance of remaining insurance coverage,

8    (ii) the policy or policies affected by the

9    settlement(s), and (iii) a statement based on

10   their professional judgment that adequate

11   insurance coverage (including excess layers)

12   continues to be sufficient to satisfy the

13   remaining Pre-8/2001 Ephedra Claims.

14   ii.   The Debtors In Possession will also provide

15   bankruptcy counsel for the OCC (David Molton,

16   Esq.) and OIC (Laura Stuart Taylor, Esq.) with the

17   settlement amounts pursuant to the terms of a

18   confidentiality agreement.[13]  Neither Mr. Molton

19   nor Ms. Taylor will disclose such settlement

20   amounts to anyone, including to any member of

21   their respective official committees.

22   iii. The Noticed Parties will have five (5) business

23   days ("Initial Objection Period") from the date on

24

25   _____

26

27   [13]  Prior to the hearing, the Debtors in Possession will enter into a separate
     agreement with the OCC and OIC regarding the confidential nature of the
     settlement amounts which shall provide that the settlement amounts are not

28   to be shared with committee members, and will be restricted to "Attorneys'-
     Eyes-Only."

which the Settlement Summary is served to object
to, or request additional time to evaluate, the
proposed settlement.  Any such objection or
request will be in writing and delivered to the
bankruptcy attorneys for the Debtors in
Possession, Allen Matkins Leck Gamble Mallory &
Natsis LLP (Attention: David L. Osias, Esq.) to
the special litigation counsel for the Debtors in
Possession, Higgs, Fletcher & Mack (Attention:
William M. Low, Esq.), and to defense counsel
provided by Evanston and National Union, Lewis,
Brisbois, Bisgaard and Smith (R. Gaylord
Smith, Esq.), with copies to the attorneys for the
OCC, Brown Rudnick Berlack & Israels (Attention:
David Molton, Esq.), the attorneys for the OIC,
Sheppard Mullin Richter & Hampton (Attention:
Laura Stuart Taylor, Esq.), and the attorneys for
Shareholders, Cooley Godward LLP (Attention:
Steven M. Strauss, Esq.).  If any Noticed Party
timely provides a written request to the counsel
of the Debtors in Possession for additional time
to evaluate the proposed settlement, such Noticed
Party will have an additional ten (10) business
days to object to the proposed settlement
("Extended Objection Period").  If no written

1

2

3              objection is received by counsel for the Debtors

4              in Possession prior to the expiration of the

5              Initial Objection Period or Extended Objection

6              Period (as the case may be), or if the Debtors in

7              Possession obtain the consent of the Noticed

8              Parties, the Debtors in Possession will be

9              authorized to consummate the proposed settlement

10             and take such actions as are reasonable or

11             necessary to close the transaction.

12      iv.    If any Noticed Party delivers an objection to the

13             proposed settlement so that it is received by the

14             counsel of the Debtors in Possession prior to the

15             expiration of the Initial Objection Period or

16             Extended Objection Period (as the case may be),

17             the Debtors in Possession and the objecting

18             Noticed Party will use good faith efforts to

19             resolve the objection.  If the Debtors in

20             Possession and the objecting Noticed Party are

21             unable to achieve a consensual resolution, the

22             Debtors in Possession will proceed with the

23             proposed settlement upon expedited notice and an

24             opportunity for a hearing, subject to the Court's

25             availability.  However, in such case, the

26             settlement amount will remain confidential.

27

28

1

2

3          v.   Upon consummation of each settlement, such

4               claimant's proof(s) of claim will be withdrawn

5               without further order of this Court.  Debtors in

6               Possession will file a Notice of Withdrawal of

7               Proofs of Claim to amend the Court's claim docket.

8          vi.  Nothing in the foregoing procedures will prevent

9               the Debtors in Possession, in their sole

10              discretion, from seeking the Court's approval at

11              any time of any proposed settlement upon notice

12              and a hearing.

13   **B.   The Settlement Procedures Should Be Approved Because
     Settlement Decisions Are Within the Exercise of the**

14   **Sound Business Judgment of the Debtors in Possession**

15        Granting the Debtors in Possession the authority to settle

16   the Pre-8/2001 Ephedra Claims pursuant to the Settlement

17   Procedures proposed herein constitutes the most efficient and

18   cost-effective means of settling claims.  The Debtors in

19   Possession and their insurers, will continue to exercise their

20   reasonable business judgment in negotiating compromises and

21   settlements and will continue to be guided by the factors

22   established by relevant case law regarding the reasonableness of

23   such settlements.   Protective Comm. for Indep. Stockholders of

24   TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

25        With respect to any proposed settlement, the Debtors in

26   Possession will focus on the merits of the underlying claims, the

27   risk to the Debtors in Possession if such claims were to proceed

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

644289.05/SD

-22-

1

2

3  to trial, the expense the Debtors in Possession (and the

4  insurers) would likely incur in connection with defending such

5  claims, and the effect of the foregoing on policy amounts.  The

6  Debtors in Possession are confident that each proposed settlement

7  will clearly meet the standards set forth in TMT Trailer Ferry.

8      As stated above, the Debtors in Possession maintained

9  various insurance policies that cover the Pre-8/2001 Ephedra

10  Claims.  Payments in connection with settlements of Pre-8/2001

11  Ephedra Claims will be made exclusively out of insurance

12  proceeds.  As such, payments in connection with settlements of

13  Pre-8/2001 Ephedra Claims will not affect the interests of the

14  other creditors because such payments will be made out of the

15  insurance proceeds that are not otherwise available to the

16  estates.

17      This Court has the authority to grant the relief requested

18  in this Motion pursuant to sections 105(a) and 363(b) of the

19  Bankruptcy Code and Bankruptcy Rule 9019(b).  Section 105(a) of

20  the Bankruptcy Code provides that "[t]he court may issue any

21  order . . . that is necessary or appropriate to carry out the

22  provisions of this title."  11 U.S.C. § 105(a).  Section 363(b)

23  of the Bankruptcy Code provides that a debtor in possession,

24  "after notice and a hearing, may use, sell, or lease, other than

25  in other ordinary course of business, property of the estate."

26  See, id. at § 363(b)(1).  Providing the Debtors in Possession

27  with the authority to efficiently and economically settle

28

1

2

3    numerous claims against their estates out of insurance proceeds

4    is clearly beneficial to the Debtors in Possession and will

5    assist the Debtors in Possession in their liquidation efforts.

6    Bankruptcy Rule 9019(b) provides that the Court may authorize the

7    Debtors in Possession to settle certain classes of controversies

8    without requiring separate notice and a hearing with respect to

9    each separate controversy.  Based on the forgoing, the relief

10   requested is necessary and appropriate, is in the best interests

11   of the estates and creditors and should be granted.

12                          **V.      CONCLUSION**

13        Based on all of the foregoing, the Debtors in Possession

14   respectfully request that this Court enter an order (1) approving

15   compromise and settlement of certain claims between the Debtors

16   in Possession and certain ephedra claimants, (2) authorizing and

17   establishing procedures to settle certain other Pre-8/2001

18   Ephedra Claims, and (3) granting any further relief that the

19   Court deems just and proper.  A copy of the proposed Order is

20   attached hereto as Exhibit A and incorporated herein by

21   reference.

22   Dated:  May 31, 2006              By:_____/s/ Debra A. Riley_____
                                           DAVID L. OSIAS
23                                         DEBRA A. RILEY
                                           ALLEN MATKINS LECK GAMBLE
24                                         MALLORY & NATSIS LLP
                                           Attorneys for Debtors in
25                                         Possession

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

644289.05/SD

-24-

# EXHIBIT A

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

                                        Debtor.

BANKRUPTCY NO.

Date of Hearing:
Time of Hearing:
Name of Judge:

## ORDER ON

        IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through _____ with exhibits, if any, for a total of _____ pages, is granted.  Motion/Application Docket Entry No. _____

//

//

//

//

//

//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

_____
(Firm name)


By:_____
    Attorney for ☐ Movant ☐ Respondent

CSD 1001A

ORDER ON MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT                    PAGE 2
OF CERTAIN EPHEDRA CLAIMS AND ESTABLISHMENT OF PROCEDURES
TO SETTLE CERTAIN OTHER EPHEDRA CLAIMS
DEBTORS:   MII LIQUIDATION, INC., FORMERLY METABOLIFE
                   INTERNATIONAL, INC., AHP LIQUIDATION, INC.,
                   FORMERLY ALPINE HEALTH PRODUCTS, LLC.
                                                        CASE NO. 05-06040-H11 (Joint Admin.)

Upon the motion, dated May 31, 2006 ("Motion"), of MII Liquidation, Inc., formerly Metabolife International, Inc., and AHP Liquidation, LLC, formerly Alpine Health Products, LLC (collectively, "Debtors in Possession") for an order pursuant to sections 105(a) and 363(b) of Title 11 of the United States Code ("Bankruptcy Code") and Rule 9019(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") approving the settlement and compromise of certain ephedra claims and authorizing the establishment of procedures to settle other ephedra claims against the estates of the Debtors in Possession, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors in Possession and their estates and creditors; and the Court having reviewed the Motion and having heard the statements of counsel at a hearing before the Court ("Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is hereby granted; and it is further

ORDERED that the Debtors in Possession shall be, and hereby are, authorized to settle the ephedra claims of the claimants listed on Exhibit 1 hereto.  The Debtors in Possession are hereby authorized and directed to take any and all actions necessary to implement the settlements; and it is further

ORDERED that upon consummation of each settlement, such claimant's proof(s) of claim shall be withdrawn without further order of this Court.  Debtors in Possession shall file a Notice of Withdrawal of Proofs of Claim to amend the Court's claim docket; and it is further

ORDERED that the Debtors in Possession are authorized to compromise and settle Pre-8/2001 Ephedra Claims (as defined in the Motion) for a settlement amount not more than $350,000, subject to the settlement procedures set forth in the Motion and as follows:

      i.      The Debtors in Possession shall serve via e-mail, facsimile, or overnight delivery (a) the attorneys for the OCC, (b) the attorneys for the OIC, (c) the U.S. Trustee, (d) the attorneys for the Shareholders, (e) the members of the Liaison Group, and (f) Professor Green (collectively, the "Noticed Parties"), on a confidential basis, a summary of the proposed settlement of a Pre-8/2001 Ephedra Claim, which provides that such proposed settlement (i) is in an amount not exceeding $350,000, (ii) provides for immediate or deferred payment of cash up to the settlement amount, (iii) is payable solely out of insurance coverage proceeds, and (iv) identifies the co-defendants being released ("Settlement Summary").  Further, all Noticed Parties shall receive a statement by insurer's counsel and insurer that includes (i) the balance of remaining

ORDER ON MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT                    PAGE 3
OF CERTAIN EPHEDRA CLAIMS AND ESTABLISHMENT OF PROCEDURES
TO SETTLE CERTAIN OTHER EPHEDRA CLAIMS
DEBTORS:  MII LIQUIDATION, INC., FORMERLY METABOLIFE
               INTERNATIONAL, INC., AHP LIQUIDATION, INC.,
               FORMERLY ALPINE HEALTH PRODUCTS, LLC.
                                                        CASE NO. 05-06040-H11 (Joint Admin.)

insurance coverage, (ii) the policy or policies affected by the settlement(s), and (iii) a statement based on their professional judgment that adequate insurance coverage (including excess layers) continues to be sufficient to satisfy the remaining Pre-8/2001 Ephedra Claims.

ii.     The Debtors In Possession shall also provide bankruptcy counsel for the OCC (David Molton, Esq.) and OIC (Laura Stuart Taylor, Esq.) with the settlement amounts pursuant to the terms of a confidentiality agreement. Neither Mr. Molton nor Ms. Taylor shall disclose such settlement amounts to anyone, including to any member of their respective official committees.

iii.    The Noticed Parties shall have five (5) business days ("Initial Objection Period") from the date on which the Settlement Summary is served to object to, or request additional time to evaluate, the proposed settlement. Any such objection or request shall be in writing and delivered to the bankruptcy attorneys for the Debtors in Possession, Allen Matkins Leck Gamble Mallory & Natsis LLP (Attention: David L. Osias, Esq.) to the special litigation counsel for the Debtors in Possession, Higgs, Fletcher & Mack (Attention: William M. Low, Esq.), and to defense counsel provided by Evanston and National Union, Lewis, Brisbois, Bisgaard and Smith (R. Gaylord Smith, Esq.), with copies to the attorneys for the OCC, Brown Rudnick Berlack & Israels (Attention: David Molton, Esq.), the attorneys for the OIC, Sheppard Mullin Richter & Hampton (Attention: Laura Stuart Taylor, Esq.), and the attorneys for Shareholders, Cooley Godward LLP (Attention: Steven M. Strauss, Esq.).  If any Noticed Party timely provides a written request to the counsel of the Debtors in Possession for additional time to evaluate the proposed settlement, such Noticed Party will have an additional ten (10) business days to object to the proposed settlement ("Extended Objection Period").  If no written objection is received by counsel for the Debtors in Possession prior to the expiration of the Initial Objection Period or Extended Objection Period (as the case may be), or if the Debtors in Possession obtain the consent of the Noticed Parties, the Debtors in Possession shall be authorized to consummate the proposed settlement and take such actions as are reasonable or necessary to close the transaction.

iv.     If any Noticed Party delivers an objection to the proposed settlement so that it is received by the counsel of the Debtors in Possession prior to the expiration of the Initial Objection Period or Extended Objection Period (as the case may be), the Debtors in Possession and the objecting Noticed Party shall use good faith efforts to resolve the objection.  If the Debtors in Possession and the objecting Noticed Party are unable to achieve a consensual resolution, the Debtors in Possession shall proceed with the

ORDER ON MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT                PAGE 4
OF CERTAIN EPHEDRA CLAIMS AND ESTABLISHMENT OF PROCEDURES
TO SETTLE CERTAIN OTHER EPHEDRA CLAIMS
DEBTORS:  MII LIQUIDATION, INC., FORMERLY METABOLIFE
                   INTERNATIONAL, INC., AHP LIQUIDATION, INC.,
                   FORMERLY ALPINE HEALTH PRODUCTS, LLC.
                                                                    CASE NO. 05-06040-H11 (Joint Admin.)

proposed settlement upon expedited notice and an opportunity for a hearing, subject to the Court's availability.  However, in such case, the settlement amount shall remain confidential.

v.      Upon consummation of each settlement, such claimant's proof(s) of claim shall be withdrawn without further order of this Court.  Debtors in Possession shall file a Notice of Withdrawal of Proofs of Claim to amend the Court's claim docket.

vi.     Nothing in the foregoing procedures shall prevent the Debtors in Possession, in their sole discretion, from seeking the Court's approval at any time of any proposed settlement upon notice and a hearing.

and it is further

ORDERED that payment of any settlement of a Pre-8/2001 Ephedra Claims shall be paid exclusively out of the proceeds of the insurance policies of the Debtors in Possession that cover the Pre-8/2001 Ephedra Claims; and it is further

ORDERED that this Order shall not obligate or require the Debtors in Possession to settle any claims that they do not consider, in their sole discretion, appropriate to compromise and settle; nor shall this Order obligate or require the Debtors in Possession to settle any claims in amounts in excess of the amounts which the Debtors in Possession, in their sole discretion, believe to be reasonable and appropriate consistent with the factors set forth herein; nor shall this Order preclude the Debtors in Possession from settling any claims against their estates upon further application to the Court; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(g), this Order shall be effective immediately.

ORDER ON MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT          PAGE 5
OF CERTAIN EPHEDRA CLAIMS AND ESTABLISHMENT OF PROCEDURES
TO SETTLE CERTAIN OTHER EPHEDRA CLAIMS
DEBTORS:  MII LIQUIDATION, INC., FORMERLY METABOLIFE
          INTERNATIONAL, INC., AHP LIQUIDATION, INC.,
          FORMERLY ALPINE HEALTH PRODUCTS, LLC.
                                        CASE NO. 05-06040-H11 (Joint Admin.)

### EXHIBIT "1"

| CLAIMANT | ACTION/CASE NO. | PROOF OF CLAIM NO.[1] |
|---|---|---|
| Aisha Colbert | Aisha Colbert v. MII, JCCP No. 4360-00089 | M236/A57 |
| Janet Emmert<br>Andrew Emmert<br>Aaron Emmert<br>Hannah Emmert | Janet Emmert, et. al. v. MII, et al., JCCP No. 4360-00058 | M232/A53<br>M233/A54<br>M234/A55<br>M235/A56 |
| John P. Hunt | John P. Hunt v. MII, et al., JCCP No. 4360-00071 | M241/A62 |
| Shelli Schlaufhauser | Shelli Schlaufhauser and John Schlaufhauser v. MII, et al., MDL 1598, S.D.N.Y. Case No. 1:04-cv-02891 | M29 |
| Patrick Chalvire<br>Grace Chalvire | Grace Chalvire and Patrick Chalvire v. MII, et al., JCCP 4360-00052 | M276/A25<br>M277/A32 |
| Joanne Marlow<br>John Marlow | Joanne Marlow and John Marlow v. MII, MDL-1598, S.D.N.Y. Case No. 1:04-cv-02887 | M248/A69<br>M249/A70 |
| Nancy Rhome | Nancy Rhome v. MII, MDL-1598, S.D.N.Y. Case No. 1:04-cv-08555 | M278/A31 |
| Terri Bagley | Terri Bagley v. MII, et al., SDSC Case No. GIC 849900, (JCCP number unassigned) | M323 |
| Gregory Litten | Gregory Litten v. MII, et al., SDSC Case No. GIC 849903, (JCCP number unassigned) | M351 |
| Lydia Reynoso | Lydia Reynoso v. MII, (JCCP number unassigned) | M273/A33 |
| Joan Scott | Joan Scott v. MII, (JCCP number unassigned) | M225/A46 |
| Charles Cate | Charles Cate v. MII, JCCP number 4360-00051. | M702 |

[1]    Proof of claim numbers indicated with an "M" are proofs of claims filed in the MII bankruptcy case (Case No. 05-06040).  Proofs of claim numbers indicated with an "A" are proofs of claims filed in the AHP bankruptcy case (Case No. 05-06041).

ORDER ON MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT                PAGE 6
OF CERTAIN EPHEDRA CLAIMS AND ESTABLISHMENT OF PROCEDURES
TO SETTLE CERTAIN OTHER EPHEDRA CLAIMS
DEBTORS:  MII LIQUIDATION, INC., FORMERLY METABOLIFE
              INTERNATIONAL, INC., AHP LIQUIDATION, INC.,
              FORMERLY ALPINE HEALTH PRODUCTS, LLC.
                                                              CASE NO. 05-06040-H11 (Joint Admin.)

| CLAIMANT | ACTION/CASE NO. | PROOF OF CLAIM NO.[1] |
|---|---|---|
| Patricia Collins | Patricia Collins v. MII, et al., MDL-1598; S.D.N.Y Case No. 1:05-cv-00154 | M476/A108 |
| Eric Harned | Eric Harned v. MII, et al., USBC-S.D., Cal. Case No. 06-90188-JH | M552 |
| Candice LeGrande | Candice LeGrande v. MII, 10th Judicial District of Galveston County, Texas; Case No. 03-CV-0748 | M589/A135 |
| Charles Motley | Charles Motley v. MII, MDL-1598, S.D.N.Y. Case No. 1:05-cv-01013 | M505 |
| Jerry Nygren | Jerry Nygren and Janet Nygren v. MII, et al., USBC-S.D.Cal. Case No. 06-90189 | M645 |
| Bertie O'Bryant | Bertie O'Bryant v. MII, et al., USBC-S.D.Cal. Case No. 06-90187 | M644 |
| Gail O'Neal | Gail O'Neal v. MII, USBC-S.D.Cal. Case No. 06-90185 | M643 |
| Joseph Saiter | Joseph Saiter v. MII, et al.; USDC-S.D.Cal. Case No. 06-CV-669 | M30 |
| Terry Shupe | Terry Shupe v. MII, et al., MDL-1598; S.D.N.Y Case No. 1:04-cv-07640 | M615 |